UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

TERRY WOODRIDGE

VERSUS

CAROLYN W. COLVIN,
ACTING COMMISSIONER OF
SOCIAL SECURITY

CIVIL ACTION

NO. 15-485-SDD-EWD

## NOTICE

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the U. S. District Court.

In accordance with 28 U.S.C. §636(b)(1), you have 14 days after being served with the attached report to file written objections to the proposed findings of fact, conclusions of law, and recommendations set forth therein. Failure to file written objections to the proposed findings, conclusions and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court.

ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

Signed in Baton Rouge, Louisiana, on July 14, 2016.

**ERIN WILDER-DOOMES**
**UNITED STATES MAGISTRATE JUDGE**

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

TERRY WOODRIDGE

VERSUS

CAROLYN W. COLVIN,
ACTING COMMISSIONER OF
SOCIAL SECURITY

CIVIL ACTION

NO. 15-485-SDD-EWD

## MAGISTRATE JUDGE'S REPORT

Plaintiff, Terry Woodridge ("Plaintiff"), brought this action under 42 U.S.C. § 405(g) for judicial review of the final decision of Carolyn W. Colvin, Acting Commissioner of Social Security (the "Commissioner") denying his application for disability insurance benefits.[1] Plaintiff has filed a Memorandum in Support of Appeal.[2] Defendant has filed a brief in opposition[3] and Plaintiff has filed a reply.[4]

For the reasons set forth herein, it is the recommendation of this Court that the decision of the Commissioner be **REVERSED** and this case **REMANDED** for further proceedings consistent with this opinion.

**I.     Procedural History**

Plaintiff filed an application for Title II disability benefits[5] alleging that, as of March 13, 2013, he was disabled and no longer able to work due to "lower lumbar spinal fusion surgery" and

---

[1] Plaintiff did not file for supplemental security income ("SSI"). AR p. 118. References to documents filed in this case are designated by "R. Doc. [page number(s)]." References to the record of administrative proceedings filed in this case are designated by "AR [page number(s)."

[2] R. Doc. 10.

[3] R. Doc. 11.

[4] R. Doc. 15.

[5] AR pp. 118-124.

2

"back injury."[6] Plaintiff's claim was initially denied and Plaintiff filed a request for hearing.[7] A hearing was held on February 12, 2014 at which Plaintiff, represented by counsel, testified.[8] An unfavorable decision was rendered by the Administrative Law Judge ("ALJ") on March 27, 2014.[9] On May 29, 2015, the Appeals Council of the Office of Disability Adjudication and Review ("Appeals Council") denied Plaintiff's request for review of the ALJ's decision.[10] Accordingly, Plaintiff exhausted his administrative remedies before filing this action for judicial review and the ALJ's decision is the Commissioner's final decision for purposes of judicial review.

## II.     Standard of Review

Under 42 U.S.C. § 405(g), judicial review of a final decision of the Commissioner denying disability benefits is limited to two inquiries: (1) whether substantial evidence exists in the record as a whole to support the Commissioner's findings, and (2) whether the Commissioner's final decision applies the proper legal standards. *Myers v. Apfel*, 238 F.3d 617, 619 (5th Cir. 2001); *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005). If the Commissioner fails to apply the correct legal standards, or provide a reviewing court with a sufficient basis to determine that the correct legal principles were followed, it is grounds for reversal. *Bradley v. Bowen*, 809 F.2d 1054, 1057 (5th Cir. 1981); *Western v. Harris*, 633 F.2d 1204, 1206 (5th Cir. 1981); *Wiggins v. Schweiker*, 679 F.2d 1387, 1389 (11th Cir. 1982).

If substantial evidence supports the Commissioner's findings, they are conclusive and must be affirmed. *Richardson v. Perales*, 402 U.S. 389, 91 S.Ct. 1420, 1422 (1971); *Martinez v. Chater*,

---

[6] AR p. 64.

[7] AR pp. 72-75 & AR pp. 76-77.

[8] AR pp. 33-62.

[9] AR pp. 17-28.

[10] AR pp. 1-4.

64 F.3d 172, 173 (5th Cir. 1995). Substantial evidence is that which is relevant and sufficient for a reasonable mind to accept as adequate to support a conclusion. It is more than a mere scintilla and less than a preponderance. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994); *Carey v. Apfel*, 230 F.3d 131, 135 (5th Cir. 2000). A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision. *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001) (quoting *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000)). Conflicts in the evidence are for the Commissioner to decide, and if substantial evidence is found to support the decision, the decision must be affirmed even if there is evidence on the other side. *Masterson v. Barnhart*, 309 F.3d 267, 272 (5th Cir. 2002); *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990). In applying the substantial evidence standard the court must review the entire record as whole, but may not reweigh the evidence, try the issues *de novo*, or substitute its judgment for that of the Commissioner, even if the evidence weighs against the Commissioner's decision. *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000).

### III. The Commissioner's Determination

A claimant has the burden of proving that he or she suffers from a disability, which is defined as a medically determinable physical or mental impairment lasting at least 12 months that prevents the claimant from engaging in substantial gainful activity. 20 C.F.R. §§ 404.1505; 416.905. The regulations require the ALJ to apply a five-step sequential evaluation to each claim for benefits. 20 C.F.R. §§ 404.1520; 416.920. In the five-step sequence used to evaluate claims the Commissioner must determine whether: (1) the claimant is currently engaged in substantial gainful activity; (2) the claimant has a severe impairment(s); (3) the impairment(s) meets or equals the severity of a listed impairment in Appendix 1 of the regulations; (4) the impairment(s) prevents

4

the claimant from performing past relevant work; and, (5) the impairment(s) prevents the claimant from doing any other work. *Masterson v. Barnhart*, 309 F.3d 267, 271 (5th Cir. 2002).

The burden rests upon the claimant throughout the first four steps of this five-step process to prove disability, and if the claimant is successful in sustaining his burden at each of the first four levels then the burden shifts to the Commissioner at step five. *Muse v. Sullivan*, 925 F.2d 785, 789 (5th Cir. 1991). If the claimant shows at step four that he is no longer capable of performing past relevant work, the burden shifts to the Commissioner to show that the claimant is able to engage in some type of alternative work that exists in the national economy. *Myers v. Apfel*, 238 F.3d 617, 619 (5th Cir. 2001). If the Commissioner meets this burden the claimant must then show that he cannot in fact perform that work. *Boyd v. Apfel*, 239 F.3d 698, 705 (5th Cir. 2001).

Here, the ALJ found that Plaintiff was not disabled within the meaning of the Social Security Act from March 14, 2013 (Plaintiff's alleged onset date) through March 27, 2014 (the date of the ALJ's ruling).[11] At steps one and two of the analysis, the ALJ found that Plaintiff had not engaged in substantial gainful activity since March 14, 2013 and that the Plaintiff suffered from the severe impairment of status post lumbar fusion.[12] At step three, despite Plaintiff's argument to the contrary, the ALJ found that Plaintiff's impairment did not meet or medically equal the required criteria for any listed impairment, including the criteria for Listing 1.04(A) Musculoskeletal Impairments – Disorders of the Spine ("Listing 1.04A").[13] The ALJ then found that Plaintiff had the residual functional capacity ("RFC") to perform light work "except he can

---

[11] AR p. 20.

[12] AR p. 22. The ALJ additionally found that Plaintiff met insured status requirements through December 31, 2017. AR p. 20.

[13] AR p. 23.

occasionally climb ramps and stairs; never climb ladders ropes and scaffolds; and occasionally stoop, kneel, crouch, and crawl….the claimant must avoid all exposure to temperature extremes, must alternate sitting and standing every 30-40 minutes, and must use a hand held assistive device to ambulate."[14] Based on this RFC, the ALJ determined that Plaintiff could not perform any past relevant work (step four) but that other jobs in the national economy existed which Plaintiff could perform (step five).[15] Accordingly, the ALJ concluded that Plaintiff was not disabled from March 14, 2013 through the date of the ALJ's ruling.[16]

## IV. Plaintiff's Allegations of Error

Plaintiff's appeal to this Court focuses on step three of the disability analysis, *i.e.*, whether Plaintiff's impairment meets or medically equals Listing 1.04A.[17] Specifically, Plaintiff argues that: (1) he put forth substantial evidence that his impairment met or medically equaled Listing 1.04A and that the ALJ's reasoning to find otherwise is confusing and contrary to the evidence; (2) he submitted new and material evidence to the Appeals Council which directly contradicted the ALJ's step three reasoning and therefore required reversal or remand; and (3) the ALJ erred in not analyzing the issue of medical equivalence.[18]

---

[14] AR p. 23.

[15] AR pp. 26-28.

[16] AR p. 28.

[17] R. Doc. 10, p. 7. Under the regulations, if a claimant's impairment(s) meets the duration requirement and meets or equals a listed impairment, the claimant will be disabled regardless of age, education and work experience. 20 C.F.R. § 404.1520(d) ("If you have an impairment(s) which meets the duration requirement and is listed in appendix 1 or is equal to a listed impairment(s), we will find you disabled without considering your age, education, and work experience."). If the claimant's impairment(s) does not meet or equal a listed impairment, the ALJ will make a determination regarding the claimant's RFC to be used in steps four and five. 20 C.F.R. § 404.1520(e) ("If your impairment(s) does not meet or equal a listed impairment, we will assess and make a finding about your residual functional capacity….We use our residual functional capacity assessment at the fourth step of the sequential evaluation process to determine if you can do your past relevant work…and at the fifth step of the sequential evaluation process (if the evaluation proceeds to this step) to determine if you can adjust to other work….").

[18] R. Doc. 10, pp. 8-13.

6

**V.     Analysis**

   **A.  Does Plaintiff's Impairment Meet Listing 1.04A?**[19]

At step three of the evaluation process, Plaintiff "has the burden of establishing that his impairment meets or equals the criteria for presumptive disability described in the listings." *Whitehead v. Colvin*, 820 F.3d 776, 781 (5th Cir. 2016) (citing *Muse v. Sullivan*, 925 F.2d 7785, 789 (5th Cir. 1991)).  "'For a claimant to show that his impairment matches a listing, it must meet *all* of the specified medical criteria.'"  *Id*. (quoting *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990)).

To meet Listing 1.04A, a claimant must show a disorder of the spine, such as degenerative disc disease "resulting in compromise of the nerve root…or the spinal cord," with: (1) "[e]vidence of nerve root compression characterized by neuro-anatomic distribution of pain;" (2) "limitation of motion of the spine;" (3) "motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss;" and (4) "if there is involvement of the lower back, positive straight-leg raising test (sitting and supine)."  In addition to meeting the elements set out in Listing 1.04A, a claimant must also establish that such condition lasted or can be expected to last for a continuous period of not less than twelve months.  *See*, 20 C.F.R. 404.1525(c)(4) ("Most of the listed impairments are permanent or expected to result in death.  For some listings, we state a specific period of time for which your impairment(s) will meet the listing.  For all others, the evidence must show that your impairment(s) has lasted or can be expected to last for a continuous period of at least 12 months.").

In finding that Plaintiff did not satisfy the criteria for Listing 1.04A, the ALJ explained:

> [T]he claimant, through Counsel, argued that the medical record shows findings of sufficient severity to meet the requirements of Listing 1.04(A) for a musculoskeletal impairment.  In order to meet

---

[19] Despite Plaintiff's first assignment of error – that he "put forth substantial evidence that his impairment met or equaled" Listing 1.04A – Plaintiff focuses on whether the administrative record establishes the existence of positive straight leg raising tests sitting and supine (i.e., that he meets (rather than equals) Listing 1.04A).

7

> Listing 1.04A, a claimant must have a disorder of the spine resulting in compromise of the nerve root, with evidence of nerve root compression, characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight leg raising test (sitting and supine). See 20 C.F.R. Pt. 404, Subpt P, App. 1 § 1.04A.
>
> **Here, the evidence does not support a finding that the claimant met all the requirements of 1.04A because the record is devoid of any evidence demonstrating positive straight leg raising tests, both sitting and supine, during the relevant period.** When examined by Dr. Lundy in November of 2013 (10F/21-32), the claimant had diminished deep tendon reflexes, and his straight leg-raising test was positive on the right. By January, however, when examined by Dr. Burris (Ex. 10F/3-16) deep tendon reflexes throughout the upper and lower extremities were "normal" except in the right and left knee, but there was no sensory loss. On July 30, 2013 (10F/26) straight-leg-raising testing was negative on the left. In point of fact, straight-leg-raising was consistently positive on the right, but negative on the left.[20]

Plaintiff argues that "[t]he ALJ's lone reason for denying this claim at step 3 was the supposed lack of a positive SLRT [straight leg raising test]"[21] and therefore the "ALJ's rationale is not only confusing but contradictory" because the ALJ states in the same paragraph that "straight-leg-raising was consistently positive on the right, but negative on the left."[22] In response, Defendant asserts that "procedural perfection" is not required in administrative proceedings and that "[b]ecause Plaintiff did not show that he satisfied all the specified criteria of Listing 1.04A at step three" the ALJ's alleged errors did not affect his substantial rights such that remand would be

---

[20] AR. p. 23. Emphasis added.

[21] R. Doc. 10, p. 9. Defendant recognizes that "the listing does not require positive SLR tests, bilaterally…." R. Doc. 11, p. 6. *See also*, *Miller v. Astrue*, 2012 WL 3255595, at *5 (M.D. La. June 25, 2012) (finding harmless error despite ALJ's misstatement of requirements for Listing 1.04A and explaining "[w]hile it is true that Listing 1.04 does not require bilateral positive straight leg raising tests, the ALJ's error was a harmless one as procedural perfection in social security administrative proceedings is not required, and the substantial rights of the plaintiff were not affected simply because the ALJ misstated one criteria of the Listing.").

[22] R. Doc. 10, p. 9.

8

required.[23]  Defendant asserts that the "[t]he ALJ correctly found that Plaintiff failed to demonstrate positive straight leg raising (SLR) tests, *both sitting and supine*, during the relevant period."[24]  Further, Defendant argues that despite a positive straight leg raising test, "the ALJ essentially noted that these findings were not longstanding, as on January 2, 2014, Debra L. Burris, M.D., found that Plaintiff's deep tendon reflexes throughout the upper and lower extremities were 'normal' except in the right and left knee, but there was no sensory loss."[25]

An "ALJ is not always required to do an exhaustive point-by-point discussion…" at each step of the disability analysis.  *Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007).  However, an "ALJ is required to discuss the evidence and explain the basis for his findings at each unfavorable step of the sequential evaluation process."  *Jordan v. Astrue*, 2012 WL 443791, at *3 (W.D. La. Jan. 13, 2012) (citing *Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007)).  Here, the ALJ did provide an explanation for denial of disability at step three – his finding that the record was devoid of any evidence demonstrating positive straight leg raising tests, *both sitting and supine*.  Although the ALJ noted the existence of a positive straight leg raising test on the right, the Court's review of the administrative record confirms that those results do not indicate whether the test was performed in both the sitting and supine positions.  Without such information, the ALJ correctly found Plaintiff failed to meet his burden of establishing his impairment met Listing 1.04A.  *See*, *Wyre v. Commissioner of Social Sec. Admin.*, 2015 WL 589738, at *6 (M.D. La. Feb. 11, 2015)

---

[23] R. Doc. 11, p. 5.

[24] R. Doc. 11, p. 6.

[25] R. Doc. 11, p. 6.  Defendant goes on to state that "[o]n July 30, 2013, SLR testing was negative on the left."  R. Doc. 11, p. 6.  The ALJ made a similar statement in his ruling.  AR p. 23.  Based on the Court's review of the administrative record, it appears that the July 30, 2013 straight leg raising test referred to by both Defendant and the ALJ was actually part of Dr. Lundy's December 12, 2013 examination.  AR pp. 779-790.  Dr. Lundy's "Back (Thoracolumbar Spine) Conditions Disability Benefits Questionnaire" is organized numerically.  Section 11 reflects results of a straight leg raising test.  AR p. 784.  Section 19 asks about significant diagnostic test findings and/or results.  AR p. 787.  In that section, results of July 30, 2013 radiographs are outlined.  AR pp. 787-789.

(Plaintiff failed to satisfy requirements of Listing 1.04A where, *inter alia*, neither of the two positive straight leg raising tests in the record indicated whether tests were performed in both the seated and supine positions); *Miller v. Astrue*, 2012 WL 3255595, at *5 (M.D. La. June 25, 2012) (Plaintiff was not disabled at step three because "Listing 1.04 requires positive straight leg raise tests in both the sitting and supine positions, and the record is devoid of any evidence that the few positive straight leg raise tests conducted on plaintiff occurred in both the sitting and supine positions."); *Nieves v. Astrue*, 2013 WL 1192013 at *7 (W.D. Tex. March 21, 2013) (Listing 1.04A was not met where straight leg raising tests were only intermittently positive and failed to indicate the position – sitting or supine – in which they were performed.); *Carrillo v. Astrue*, 2010 WL 2136438, at *5 (W.D. Tex. May 26, 2010) (finding substantial evidence supported ALJ's determination that claimant did not meet the requirements of Listing 1.04A where record did not show positive straight leg raising tests, both sitting and supine, for a period of 12 continuous months.).

### B. Denial of Review by Appeals Council

Following the ALJ's ruling, Plaintiff requested review by the Appeals Council and submitted "two medical interrogatories from his treating neurosurgeon as well as updated treatment records from the VA."[26] Plaintiff argues that these medical interrogatories completed

---

[26] R. Doc. 10, p. 5. On May 29, 2015, the Appeals Council denied Plaintiff's request for review. AR pp. 1-4. The Order of Appeals Council listed the additional exhibits that it made part of the record. AR p. 6. These additional exhibits are VA Medical Records from February 17, 2014 through June 1, 2014 as well as the "medical interrogatories" completed by Plaintiff's neurosurgeon, Dr. Dumont. AR pp. 875-896. In the Fifth Circuit, the "'final decision of the Commissioner of Social Security' includes the Appeals Council's denial of a request for review" and "evidence submitted for the first time to the Appeals Council is part of the record on appeal because the statute itself provides that such record includes the 'evidence upon which the findings and decision complained of are based.'" *Higginbotham v. Barnhart*, 405 F.3d 332, 337 (5th Cir. 2005). *See also*, *Sun v. Colvin*, 793 F.3d 502, 510 (5th Cir. 2015) (noting that even if ALJ failed to obtain all of plaintiff's medical records, "it would not necessarily follow that the Commissioner's *final decision*, which includes the AC's consideration of the new evidence and subsequent denial of review, was also not supported by substantial evidence. Instead, this court must examine all of the evidence, including the new evidence submitted to the AC, and determine whether the Commissioner's final decision to deny

10

by Dr. Dumont confirm that "Plaintiff's current and prior examinations have revealed a positive SLRT in both the seated and supine positions."[27]  In response, Defendant asserts that the evidence submitted by Plaintiff following the ALJ's ruling is not relevant because it does "not relate to the relevant time frame, the alleged onset date of March 14, 2013, through the date of the ALJ's March 27, 2014 decision."[28]  Specifically with respect to the medical interrogatories completed by Dr. Dumont, Defendant asserts this evidence "has little probative value with respect to the period covered by the ALJ's decision" and states that Dr. Dumont only discusses Plaintiff's "current diagnoses" and "current treatment and diagnoses."[29]

"In deciding whether to deny the claimant's request for review, the AC [Appeals Council] must consider and evaluate any 'new and material evidence' that is submitted, if it relates to the period on or before the ALJ's decision." *Sun v. Colvin*, 793 F.3d 502, 511 (5th Cir. 2015) (citing 20 C.F.R. § 404.970(b)).  "Evidence is material if there is 'a reasonable possibility that it would have changed the outcome of the [ALJ's] determination.'" *Hamilton-Provost v. Colvin*, 605 Fed. Appx. 233, 238 (5th Cir. 2015) (citing *Latham v. Shalala*, 36 F.3d 482, 483 (5th Cir. 2015)).  In the event the Appeals Council finds that the ALJ's decision is contrary to the weight of the evidence currently in the record, it will review the case. *Sun v. Colvin*, 793 F.3d 502, 511 (5th Cir. 2015). "Otherwise, it will deny the claimant's request for review.  The regulations do not require the AC to provide a discussion of the newly submitted evidence or give reasons for denying review." *Id*.

---

Sun's claim was supported by substantial evidence.").  Accordingly, the additional exhibits made part of the record by the Appeals Council must be considered by this Court.

[27] R. Doc. 10, p. 11. *See also*, R. Doc. 15, pp. 2-3 ("the purpose of Dr. Dumont's interrogatories was to resolve this issue [of whether the SLRT was positive in both the seated and supine positions] and wherein [Dr. Dumont] specifically testified that prior exams were positive in both the seated and supine positions.").

[28] R. Doc. 11, p. 8.

[29] R. Doc. 11, p. 9.

In *Sun v. Colvin*, 793 F.3d 502, 504 (5th Cir. 2015), the Fifth Circuit reversed and remanded the Commissioner's denial of disability benefits because it was "unable to determine, from review of the record as a whole, if substantial evidence supports the Commissioner's denial of benefits…." There, claimant originally sought treatment for a fractured ankle on May 28, 2011 and filed an application for disability benefits shortly thereafter. In denying claimant's application, the ALJ emphasized that the record contained "very minimal evidence of medical treatment since the alleged onset date and no evidence of medical treatment since August 2011." *Id*. at 506. Following the ALJ's ruling, claimant requested review by the Appeals Council and submitted additional medical records documenting a second surgery seven months after the initial injury and additional treatment through June 4, 2012. *Id*. at 505-506. Although the court explained that the newly submitted evidence did not "necessarily contradict" the ALJ's findings, it found that the evidence was "significant" and "casts doubt on the soundness of the ALJ's decision." *Id*. at 512. As the court explained:

> The ALJ found that Sun was able to ambulate effectively within a year of her injury's onset and had the residual functional capacity to perform light work. These findings may still be correct and supported by substantial evidence, but the LSU medical records and Sun's second surgery create considerable uncertainty that has not been addressed or resolved by a fact finder below. In reaching his conclusion, the ALJ highlighted the lack of medical evidence in the record. The ALJ claimed to credit Sun's testimony about her pain and December 2011 surgery, but then repeated that "the record contains very minimal evidence of medical treatment since the alleged onset date and no evidence of medical treatment since August 2011" and "no evidence of physical findings to support her reported limitations and no evidence of doctor recommended activity restrictions." The ALJ indicated that the discrepancy between Sun's testimony and the lack of medical evidence contributed to his determination that Sun was not credible. Even more significant, the ALJ declined to give great weight to Dr. DiGiorgio's evaluation of Sun because "the lack of consistent treatment suggests that [Sun] retained greater functional abilities" than Dr. DiGiorgio suggested. Though the LSU medical records are

not decisive, they are certainly significant, as they support Sun's testimony and indicate that as late as April 2012 there was "still no union" in Sun's ankle, and she was only "begin[ing] weight bearing in her cam boot." Despite the significance of this new evidence, no fact finder has made findings regarding the LSU clinical reports or attempted to reconcile these reports with other conflicting and supporting evidence in the record. "Assessing the probative value of competing evidence is quintessentially the role of the fact finder. We cannot undertake it in the first instance."

*Id*. (citing *Meyer v. Astrue*, 662 F.3d 700, 707 (4th Cir. 2011) and *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005) ("Conflicts of evidence are for the Commissioner, not the courts, to resolve.")).

Here, Plaintiff submitted updated treatment records from the Veterans Administration as well as "medical interrogatories" completed by Dr. Dumont after the ALJ's March 27, 2014 ruling.[30] The updated treatment records span from February 17, 2014 (*i.e.*, before the ALJ's ruling) to June 1, 2014 (*i.e.*, after the ALJ's ruling).[31] Of potential significance, a neurosurgery

---

[30] In his Memorandum in Support of Appeal, Plaintiff states that he also submitted a September 30, 2014 award notice from the VA (the "Award Notice") awarding Plaintiff "individual unemployability due to his back impairments finding him unable to secure or follow a substantially gainful occupation." R. Doc. 10, p. 6. The cover letter purporting to send the Award Notice to the Appeals Council is dated December 11, 2014. AR, p. 243. Therein, Plaintiff's counsel asserts that the Award Notice "clearly and unequivocally relates to the issues which were before the ALJ as this award was based on Claimant's back impairment and there was no intervening trauma or later acquired disability." AR p. 243. In its denial of Plaintiff's request for review, the Appeals Council stated it "also looked [at] an eight-page award letter from the Veterans' Administration, dated September 30, 2014. The Administrative Law Judge decided your case through March 27, 2014. This new information is about a later time. Therefore, it does not affect the decision about whether you were disabled beginning on or before March 27, 2014." AR p. 2. The Award Notice was not made part of the record by the Appeals Council and is not included in the administrative record reviewed by this Court. Accordingly, this Court cannot make a determination regarding whether the Award Notice relates to Plaintiff's condition during the relevant time period (March 14, 2013 through March 27, 2014). To the extent the Award Notice relates solely to Plaintiff's condition after March 27, 2014, "remand is not appropriate 'solely for the consideration of evidence of a subsequent deterioration of what was correctly held to be a non-disabling condition.'" *Hamilton-Provost v. Colvin*, 605 Fed. Appx. 233, 238 (5th Cir. 2015) (quoting *Johnson v. Heckler*, 767 F.2d 180, 183 (5th Cir. 1985)). However, "subsequent deterioration…may form the basis of a new claim." *Johnson v. Heckler*, 767 F.2d 180, 183 (5th Cir. 1985). Conversely, to the extent the Award Notice relates to Plaintiff's condition during the relevant time period, it should have been considered by the Appeals Council. *See*, *Sun v. Colvin*, 793 F.3d 502, 504 (5th Cir. 2015) (Appeals Council must consider and evaluate new and material evidence that relates to the period on or before the ALJ's decision); *Epps v. Harris*, 624 F.2d 1267, 1274 (5th Cir. 1980) ("While the physician's opinions and the VA's decision that Epps was disabled and could not perform his previous jobs are of course not binding on the Secretary, they are evidence 'entitled to great weight.'") (citing *DePaepe v. Richardson*, 464 F.2d 92, 101 (5th Cir. 1972)).

[31] AR pp. 876-886.

13

note dated June 1, 2014 reflects Plaintiff's "positive straight leg test bilaterally."[32] However, this note does not state whether the straight leg test was taken in both the seated and supine positions. More importantly, the Court finds that it does not relate to the period of disability in question (March 14, 2013 through March 27, 2014) and therefore cannot constitute "new and material" evidence supporting remand. *See*, *Sun v. Colvin*, 793 F.3d 502, 511 (5th Cir. 2015).

With regard to the medical interrogatories completed by Dr. Dumont, it appears that Plaintiff sent two letters to Dr. Dumont dated May 2, 2014.[33] Dr. Dumont completed one set of questions on May 30, 2014[34] and a second set on June 2, 2014.[35] On May 30, 2014, Dr. Dumont responded to the question: "Does Terry exhibit a positive SLRT seated and supine? Has Terry exhibited on prior examinations a positive SLRT?" as follows: "Yes, he demonstrates a positive SLRT bilaterally R > L. He has demonstrated this on prior evaluations."[36] On June 2, 2014, Dr. Dumont responded to the question "[d]oes and has Terry exhibited straight leg raising test, sitting and supine?" as follows: "Yes, both were examined."[37]

As discussed above, a neurosurgery note dated June 1, 2014 reflects that Plaintiff exhibited "a positive straight leg test bilaterally."[38] Dr. Dumont's May 30, 2014 responses occurred prior to Plaintiff's June 1, 2014 examination and the Court's review of the record indicates that Dr. Dumont did not examine Plaintiff between March 27, 2014 and May 30, 2014. Therefore, it appears that at the time of Dr. Dumont's May 30, 2014 responses, he was basing his response on examination(s)

---

[32] AR p. 876.

[33] AR pp. 887-890 & 891-896.

[34] AR pp. 887-890.

[35] AR pp. 891-896.

[36] AR p. 887.

[37] AR p. 893.

[38] AR 876.

of Plaintiff occurring prior to the ALJ's ruling.  Conversely, Dr. Dumont's June 2, 2014 responses appear to have been completed after Plaintiff's June 1, 2014 exam.[39]  Accordingly, it is possible (although not clear either way) that Dr. Dumont's June 2, 2014 responses relate only to a period following the ALJ's ruling.  Despite this uncertainty, the Court finds that Dr. Dumont's responses to both sets of interrogatories constitute "new and material" evidence in light of the ALJ's stated reason for denying benefits at stage three of his analysis.  In particular, the ALJ found that "the evidence does not support a finding that the claimant met all the requirements of 1.04A because the record is devoid of any evidence demonstrating positive straight leg raising tests, both sitting and supine, during the relevant period."[40]  Dr. Dumont's responses appear to address this lack of evidence.

Despite the potential significance, no fact finder has made findings with regard to this newly-submitted evidence.  In light of this evidence, this Court cannot determine whether substantial evidence supports the ALJ's denial of benefits.  In such situation, remand is proper. *Sun v. Colvin*, 793 F.3d 502, 513 (5th Cir. 2015) (reversing the decision of the Commissioner and remanding case for a rehearing pursuant to 42 U.S.C. § 405(g) while expressing "no opinion as to whether [claimant] can ultimately establish that she is disabled within the meaning of the Social Security Act.").[41]  *See also*, *Nejmeh v. Colvin*, 2016 WL 642518, at *3 (N.D. Tex. Feb. 18, 2016)

---

[39] AR 876.

[40] AR p. 23.

[41] In *Hardman v. Colvin*, 820 F.3d 142, 152 (5th Cir. 2016), the Fifth Circuit, citing *Sun*, stated that "even when new and material evidence submitted to an Appeals Council is 'significant' and 'casts doubt on the soundness of the ALJ's findings,' the Appeals Council does not err in refusing to review the claimant's case if it can be determined that substantial evidence nonetheless supports the ALJ's denial of benefits."  In *Hardman*, plaintiff's new evidence of mental impairment – a report from a doctor suggesting "moderate mental retardation" – was insufficient to require remand in light of contradicting medical and third party evidence regarding claimant's cognitive and adaptive abilities. *Id*. at 151.  Specifically, the court noted that the field officer who interviewed claimant indicated that claimant had no difficulty with understanding, coherency, concentrating, talking, or answering and that "[n]one of the medical records (which included psychiatric evaluations and in-person evaluations) indicated mental impairment, and the records spanned years and were submitted by various physicians." *Id*.  In contrast, the Court's review of the administrative record in this matter does not reveal similar contradictory evidence (such as negative straight leg raising tests on the

(reversing and remanding case for further proceedings due to court's inability "to determine whether substantial evidence supports the ALJ's denial of benefits" in light of "Impartial Medical Expert Interrogatories" submitted after the ALJ's ruling which were contrary to opinions relied upon by ALJ and noting that "[t]he ALJ's finding may still be correct and supported by substantial evidence, but the opinion of Dr. Amusa is significant and casts doubt upon the ALJ's finding.").

### C. Medical Equivalency

"If a claimant does not exhibit all of the requirements of a listed impairment, medical equivalence may be established by showing that his unlisted impairment, or combination of impairments, is equivalent to a listed impairment." *Carrillo v. Astrue*, 2010 WL 2136438, at * 5 (W.D. Tex. May 26, 2010) (citing *Sullivan v. Zebley*, 493 U.S. 521, 531 (1990)). "For a claimant to qualify for benefits by showing that his unlisted impairment, or combination of impairments, is equivalent to a listed impairment, he must present medical findings equal in severity to all the criteria for the one most similar listed impairment." *Id*. *Selders v. Sullivan*, 914 F.2d 614, 619 (5th Cir. 1990); 20 C.F.R. § 416.926 (impairment is medically equivalent to a listing if medical findings related to the impairment are at least of equal medical significance); 20 C.F.R. § 404.1526(a) ("Your impairment(s) is medically equivalent to a listed impairment in appendix 1 if it is at least equal in severity and duration to the criteria of any listed impairment.").

Plaintiff states that as "an alternative to his principal argument" before the Commission, he argued medical equivalence to Listing 1.04A.[42] Specifically, Plaintiff contends that he:

> [e]xhibited both reflex and sensory loss; multiple levels (L3, L4, L5, S1) of nerve involvement despite a three level fusion; gait abnormalities medically necessitating constant use of a cane; he

---

right) and, although the ALJ cites Dr. Burris' examination as a basis for finding Plaintiff failed to introduce evidence of positive straight leg raising tests, Dr. Burris' examination does not indicate whether any straight leg raising tests were conducted during her peripheral nerve conditions examination. AR pp. 761-774.

[42] R. Doc. 10, p. 13.

>exhibited both reflex and sensory loss whereas the listing requires one or the other; and he exhibits significantly limited ROM [range of motion] in multiple planes of the lumbar spine.[43]

Plaintiff argues that "[a] reasonable mind could conclude that these medically documented facts are 'equal in severity' to the listing....Thus, the ALJ should have at least considered whether Plaintiff medically equaled the listing."[44]  In response, Defendant argues that "[s]ubstantial evidence supports the ALJ's step three determination"[45] and points out that medical records following Plaintiff's back surgeries reflect Plaintiff's improvement, that Plaintiff appears to be successfully managing online course work through Columbia Southern University, and that at the initial review level Dr. Hollis T. Rogers "made a medical determination that Plaintiff's degenerative disc disease (DDD) did not meet or equal any Listing."[46]

This Court's review of the medical records confirms that although Plaintiff initially did well following his March 14 and March 26, 2013 surgeries,[47] he requested an x-ray of his back on July 25, 2013[48] and complained of "persistent" back pain beginning in August of 2013.[49] It appears that Plaintiff's renewed complaints of pain began *after* Dr. Rogers' June 12, 2013 evaluation.[50]

---

[43] R. Doc. 10, p. 13.

[44] R. Doc. 10, p. 13.

[45] R. Doc. 11, p. 8.

[46] R. Doc. 11, pp. 10-11.

[47] *See*, *e.g.*, AR p. 714 (April 8, 2013 primary care note denying pain); AR p. 398 (April 16, 2013 PT note reporting that Plaintiff stated "his pain level is overall lower than it was prior to surgery."); AR p. 384 (April 19, 2013 neurosurgery note reporting "[p]ain condition subsiding significantly."); AR p. 330 (May 19, 2013 treatment note stating "[d]oing great.  Axial pain disappeared…Normal gait and stance...." and pain score of 1); AR 585 (July 11, 2013 nursing note reporting that "[p]atient had no complaints of pain….").

[48] AR p. 840.  A July 30, 2013 radiology report compares to September 29, 2009 and includes findings that "[d]egenerative disk disease at L4-5 and L5-S1 appear similar" and a primary diagnostic code of "[a]bnormality follow-up needed."  AR p. 522.

[49] AR p. 568 (August 14, 2013 neurosurgery note reporting that "patient complains of persistent back pain and altered sensation in the right anterior thigh with right leg weakness.  His back pain did not improve following surgery."); AR pp 801-801 (November 10, 2013 neurosurgery note reporting persistent pain).

[50] *See*, AR p. 480 (Dr. Rogers' June 12, 2013 case analysis stating "45 yo surg back 3-14-13. 5-10-13 was seen by nurse at home ambulated without assistance, no complaint of pain….") & AR pp. 68-69 (same findings).

Moreover, Plaintiff explained during his hearing that he can only sit to study for 30 to 40 minutes at a time before he must get in his recliner to relieve some of his pain.[51] Accordingly, the Court does not agree with Defendant's position that Plaintiff's post-surgery records, online course work, or Dr. Rogers' evaluation provide substantial evidence supporting a finding that Plaintiff's impairments do not medically equal Listing 1.04A.

More importantly, while the ALJ makes a finding that "the claimant's impairments do not singly or in combination meet or medically equal the required criteria for any of the impairments listed under section 1.00, Category of Musculoskeletal, or any other listed impairments…," the ALJ's analysis remains focused solely on whether Plaintiff *met* the listing. As discussed above, the ALJ based his step three analysis on finding that the evidence did not support a conclusion that "the claimant met all of the requirements of 1.04A because the record is devoid of any evidence demonstrating positive straight leg raising tests, both sitting and supine, during the relevant period."[52] Despite the ALJ's later statement that "there is clear evidence of pervasive back pain correlated with substantial evidence of motor and sensory or reflex loss associated with a significant back condition,"[53] the ALJ failed to provide any analysis of medical equivalency. In light of this Court's ruling regarding the new and material evidence submitted to the Appeals Council, in the event the ALJ finds on remand that Plaintiff has failed to establish that he meets Listing 1.04A, the ALJ should explicitly analyze medical equivalence in his step three determination. *See*, *Persley v. Commissioner of Social Sec. Admin.*, 2011 WL 4058985, at *4 (N.D. Tex. Aug. 22, 2011) (recommending remand at step three and explaining that "[i]n his decision, the ALJ explains why Plaintiff does not *meet* medical listing 7.05 but does not discuss

---

[51] AR p. 46.

[52] AR p. 23.

[53] AR p. 26.

why Plaintiff's condition does not *equal* that medical listing."); *Mapps ex rel M.J. v. Astrue*, 2010 WL 1946662, at *14 (N.D. Tex. April 30, 2010) ("A failure to consider whether impairments medically equal a listed impairment is reversible error.").

### VI.    Recommendation

For the reasons set forth herein, it is the recommendation of this Court that the decision of the Commissioner be **REVERSED** and this case **REMANDED** for further proceedings consistent with this opinion.

Signed in Baton Rouge, Louisiana, on July 14, 2016.

**ERIN WILDER-DOOMES**
**UNITED STATES MAGISTRATE JUDGE**